UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INDROJIT SARKER,

                Plaintiff,

        -against-

SENGUPTA FOOD SERVICES, LLC, *doing business as* SOHO PARK, et al.,

                Defendants.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __7/17/18__
```

17-CV-7393 (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge**.

      Before the Court is a proposed settlement in a wage and hour action brought by Indrojit Sarker[1] against Sengupta Food Services, LLC (SFS), d/b/a Soho Park, 17 Stone Street LLC, d/b/a Soho Park, Ashim Sengupta, Shawn Sengupta and Lana Sengupta. Now before the Court is the parties' joint motion (Dkt No. 42) for approval of their settlement agreement (Agreement) (Dkt. No. 43-1) pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). For the reasons stated below, the Court approves the parties' Agreement with the exception of the "no entry" and "no future employment" provisions, which cannot be enforced and must be severed.

## Background

      Defendant SFS operates two restaurants named Soho Park, one at 62 Prince Street, the other at 17 Stone Street, both in Manhattan. Compl. ¶ 6. Defendant 17 Stone Street LLC operates another Soho Park location at 832 8th Avenue. Plaintiff worked at each of the three Soho Park locations. *Id.* Plaintiff alleges that he regularly worked more than 40 hours per week without

---

[1] Plaintiff's complaint (Dkt. No. 1), and hence the caption of this action, spells his first name in this manner, as does the settlement agreement he signed. Other filings spell plaintiff's first name as "Androjit." *See*, *e.g.*, Mem. of Law in Supp. of Joint Mtn. for Approval of Sett. (Joint Mem.) (Dkt. No. 43), at 1. The Court will assume that the complaint and the settlement agreement are correct.

overtime compensation, in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* and N.Y. Labor Law (NYLL) §§ 190 *et seq.* and 650 *et seq.*

On April 9, 2018, the parties informed the District Judge that they had reached a settlement in principle. (Dkt. No. 28.) On June 11, 2018, they consented to my jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c). (Dkt. No. 34.) On July 12, 2018, the parties submitted their joint motion seeking approval of the Agreement.

The Agreement obligates defendants to pay $80,000 over a 24-month period to settle plaintiff's claims and compensate his counsel. Ag. ¶ 1. Plaintiff himself will receive $53,360, in installments, by November 1, 2019, while his attorneys will receive the balance of $26,640, also in installments, beginning on December 1, 2019. Ag. ¶¶ 1(a)-(b).

The Agreement contains mutual releases. Plaintiff releases defendants from all claims or causes of action "in regard to the payment of wages and hours, and the failure to provide pay statements" under the FLSA and the NYLL. Ag. ¶ 4. Defendants release plaintiff from "any and all known claims" against him "that may legally be waived by private agreement, including but not limited to" those arising from plaintiff's employment. *Id.* ¶ 5.

The Agreement also contains a mutual non-disparagement provision. It prevents the parties from making – or causing or encouraging others to make – any statements which "defame, disparage, demean, or in any way criticize the personal or business reputation" of any opposing party. Ag. ¶ 14. However, each party is explicitly permitted to speak "truthfully about [plaintiff's] employment with Defendants or this Action." *Id.*

Paragraph 15 – the "no entry" provision – prevents plaintiff from entering defendants' "establishment or premises under any circumstances," and from contacting defendants "or their employees at the corporate establishments and/or premises," without the prior written consent "of

the corporation's principal." Ag. ¶ 15. The Agreement does not identify the "principal" whose permission must be obtained. In a paragraph that appears just before paragraph 15 – but is numbered paragraph 2 – plaintiff agrees not to re-apply for employment with defendants. Ag. at page 5.[2] The same provision (the "no future employment" provision) permits defendants to deny employment to plaintiff solely on the basis of the Agreement.

The parties have further agreed that any portion of the Agreement "judicially declared to be invalid or unenforceable" is severable from the remainder of the Agreement. Ag. ¶ 12.

After careful consideration of the parties' submissions, the Court approves the Agreement as fair and reasonable except for the "no entry" and "no future employment provisions," which the Court deems unenforceable and thus severs from the remainder of the Agreement.

## Analysis

Settlements that dismiss FLSA claims with prejudice require approval of the district court or the Department of Labor. *See Cheeks*, 796 F.3d at 206. Before a district court enters judgment in such a case, it must scrutinize the settlement to determine that it is "fair and reasonable." *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In making that determination, the Court must consider the totality of circumstances, including, but not limited to the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Id.* (citing *Medley v. Am. Cancer Soc.*, 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).

---

[2] Beginning on page 4 of the Agreement, several paragraphs appear to be misnumbered, and consequently are identified here by their page number.

### A.      Negotiations and Financial Terms

Applying the *Wolinsky* factors, the Court is satisfied that the financial terms of the settlement are fair and reasonable. The gross settlement amount of $80,000 is reasonable in light of plaintiff's and defendants' estimates of the potential damages and the litigation risks. The parties represent that this figure comprises "between 92% and 119.9% of [plaintiff's] maximum unliquidated FLSA/NYLL recovery," Joint Mem. at 4, depending on which side's estimate of the hours actually worked by plaintiff is credited. The settlement amount thus falls within "the plaintiff[s'] range of possible recovery," and is reasonable in light of the risks associated with the litigation, while permitting the parties to avoid the "anticipated burdens and expenses" of continued litigation. *Wolinsky*, 900 F. Supp. 2d at 335. I am also satisfied that the settlement is the result of arm's-length bargaining. There is no evidence of collusion or fraud; to the contrary; the settlement process was somewhat contentious, with the final agreement by no means assured.

### B.      Releases

Under the Agreement, plaintiff releases defendants "and each of their parent companies and any of their subsidiaries, divisions, related companies, predecessors, successors, assigns, current or former employees, agents, shareholders, officers, directors and representatives" from all claims related to "the payment of wages and hours, and the failure to provide pay statements" under the FLSA and NYLL. Ag. ¶ 4.  Defendants release plaintiff from "any and all known claims Defendants may have that may legally be waived by private agreement." Ag. ¶ 5. As written, defendants' release is broader than plaintiff's. These releases do not appear to raise any fairness issues. *See Pligza v. Little Poland Rest. Inc.*, 2016 WL 9307474, at *6 (S.D.N.Y. July 18, 2016) (noting types of release provisions approved by judges in this District in wage and hour cases).

### C.      Non-Disparagement Clause

The Agreement's mutual non-disparagement clause is permissible under the FLSA because it explicitly does not prevent plaintiff from "speaking truthfully about his employment with Defendants or this Action." Ag. ¶ 14. *See Cionca v. Interactive Realty, LLC*, 2016 WL 3440554, at *3 (S.D.N.Y. June 10, 2016) (Moses, M.J.) (requiring carve-outs for truthful statements for non-disparagement clause in *Cheeks* reviews).

### D.      "No Future Employment" and "No Entry" Provisions

The Agreement permits defendants to "deny Plaintiff future employment for any position that he seeks" without giving any reason other than "this clause." Ag. at 5. Further, plaintiff may not "seek employment with Defendants after the execution of this Agreement." *Id*. The "no entry" provision goes even further, prohibiting plaintiff from setting foot in defendants' premises "under any circumstances" without obtaining "written consent" in advance. *Id*. ¶ 15.

According to the parties, "Plaintiff believes that these provisions are not within the spirit of the FLSA." Joint Mem. at 6. Nonetheless, the parties jointly submit that both provisions should be approved as fair and reasonable, stating that plaintiff "has left the restaurant industry" and "has no desire to work for defendants" or return to their "establishment." *Id.*

Plaintiff is correct.  "Courts in this Circuit have consistently rejected FLSA settlements that seek to prevent plaintiffs from having a future employment relationship with the defendant as contrary to the underlying aims of the FLSA." *Burgos v. Ne. Logistics, Inc.*, 2018 WL 2376481, at *7 (E.D.N.Y. Apr. 26, 2018) (collecting cases), *report and recommendation adopted,* 2018 WL 2376300 (E.D.N.Y. May 24, 2018); *see also Baikin v. Leader Sheet Metal, Inc.*, 2017 WL 1025991, at *1 (S.D.N.Y. Mar. 13, 2017) (refusing to approve a settlement agreement that "purports to forever bar plaintiff" from working for defendants or "visiting" their premises because

such provisions are "in strong tension with the remedial purposes of the FLSA") (citation and internal quotation marks omitted).

It is true, as the parties point out, that a similar provision was approved in *Flores v. Food Exrpess Rego Park, Inc.*, 2016 WL 386042, at *2 (E.D.N.Y. Feb. 1, 2016). In that case, after noting that the waiver of future employment was "in some tension with the broad remedial purposes of the FLSA," the court reasoned that because the defendants had only one remaining restaurant, "the waiver's impact on plaintiff's future career opportunities is not substantial." *Id.*

The Court cannot be assured that the "no future employment" provision in this case would have a similarly limited impact on plaintiff Sarker. While defendants in *Flores* had only a single restaurant, the parties here represent that defendants operate two at present. Joint. Mem. at 6. Moreover, the Agreement would prevent plaintiff from seeking employment with the corporate entities which own the restaurants, thereby potentially limiting his further employment even more broadly if those entities come under different ownership or control. Any argument that such a restriction on plaintiff's employment would have a "limited" impact on him is necessarily speculative. Plaintiff himself gains nothing from agreeing to what could become an onerous restriction, and the parties do not present any compelling reasons why he should do so. This Court therefore declines to approve the "no future employment" provision as fair and reasonable. Pursuant to paragraph 12 of the Agreement, therefore, the "no future employment" provision is unenforceable and must be severed, without invalidating the remaining provisions of the Agreement.

For similar reasons, the Court declines to approve the "no entry" provision, which prevents plaintiff from entering "the Defendant's establishment and/or premises under any circumstances" or from contacting defendants or their employees at those premises without "the prior written

6

consent of the corporation's principal." Ag. at 5. This too is a "highly restrictive provision in 'strong tension with the remedial purposes' of the FLSA." *Baikin*, 2017 WL 1025991, at *1 (quoting *Reyes v. HIP at Murray St., LLC*, No. 15 Civ. 238 slip op. at 1 (S.D.N.Y. Jan. 6, 2016). The Court therefore finds that paragraph 15 is unenforceable and must be severed before the remainder of the Agreement can be approved.

### E.      Attorneys' Fees

Plaintiffs' counsel seek $25,055.48 in attorneys' fees, and $1,584.52 in costs, which the Court will approve as reasonable. "[T]he requested fee and expense reimbursement combined amounts to 33.3% of Plaintiff's recovery." Joint Mem. at 6. The fee request, standing alone, represents approximately 32% of the net settlement proceeds (gross proceeds less costs).

To determine what portion of an FLSA settlement is reasonably allocated to attorneys' fees, a court may use either a lodestar method or a "percentage of the fund" method. *Lopez v. Ploy Dee*, 2016 WL 1626631, at *4 (S.D.N.Y. Apr. 20, 2016). Under the "percentage of the fund" method, which the Court applies here, attorneys' fee awards of one-third or less of the settlement amount are generally accepted in this District. *See, e.g.*, *Zhang v. Lin Kumo Japanese Rest., Inc.*, 2015 WL 5122530, at *4 (S.D.N.Y. Aug. 31, 2015) (reducing fee award from 37% to 33% in FLSA settlement); *deMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *9 (S.D.N.Y. Aug. 23, 2010) (collecting cases); *cf. Trinidad v. Pret a Manger (USA) Ltd.*, 2014 WL 4670870, at *11 (S.D.N.Y. Sept. 19, 2014) (reducing fee award from 33% of a "relatively modest" gross settlement amount obtained for a class of over 4,000 members to 25% of the net settlement). Here, counsel's request falls within the acceptable range.

This Court's practice, even in non-class cases, is to review counsel's billing records to ensure that a seemingly reasonable contingency agreement is not, in fact, unreasonable in light of any unusual circumstances or unique features of the case. *See, e.g.*, *Zhang*, 2015 WL 5122530, at

*2-4 (reviewing reasonableness of counsel's fees under both the lodestar and the percentage-of-recovery method); *Velasquez v. Safi-G, Inc.*, 137 F. Supp. 3d 582, 586 (S.D.N.Y. 2015) (rejecting one-third contingency fee as unreasonable where, among other things, little work was done prior to settlement and "nearly half" was done "after counsel had already been paid"). In this case, the billing records raise no such concerns.

## Conclusion

For the reasons set forth above, I find that the Agreement is fair and reasonable except for the "no future employment" provision labeled paragraph 2 on page 5 of the Agreement and the "no entry" provision contained in paragraph 15 on the same page. These provisions are hereby severed, pursuant to paragraph 12, and as so modified the Agreement is APPROVED in accordance with *Cheeks*. The Court will retain jurisdiction as requested (Joint Mem. at 8) for the limited purpose of enforcing the Agreement as modified.

It is hereby **ORDERED** that this action is **DISMISSED** with prejudice and without costs. The Clerk of Court is respectfully directed to close the case.

Dated: New York, New York
       July 17, 2018

                                        **SO ORDERED**.

                                        _____
                                        **BARBARA MOSES**
                                        **United States Magistrate Judge**